UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CORY RANDON LEWIS,

                     Petitioner,

     v.

RON HAYNES,

                 Respondent.

Case No. C19-5018-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for July 24, 2020

This matter comes before the Court on petitioner's petition for writ of *habeas corpus* under 28 U.S.C. § 2254, challenging the legality of his conviction for the crimes of second-degree murder and first-degree unlawful possession of a firearm. Petitioner presents two grounds for *habeas* relief: (1) his murder conviction violates due process because it is based upon insufficient evidence; and (2) his trial counsel provided ineffective assistance at sentencing in violation of the Sixth Amendment. Dkts. 4, 5. For the reasons set forth below, the undersigned recommends that the petition be DISMISSED. Also, for the reasons set forth below, the undersigned recommends that issuance of the certificate of appealability (COA) be DENIED.

BACKGROUND

I.  Statement of Facts

The Washington Court of Appeals summarized the facts relevant to this matter as follows:

> The State charged Lewis with second degree murder for the death of Cory Page. Lewis and Page were roommates and had a contentious relationship. In September 2014, they had a physical altercation. On December 7, Lewis and Page had another altercation that ended with the death of Page. Lewis elected to waive his right to a jury trial and the case proceeded to a bench trial.
> At trial, Lewis testified that on December 8, he and Page got into an argument in Lewis's room. While the two were arguing, Page yelled at him, threatened to shoot him, and waived a gun around in the air.

Lewis also claimed that Page pointed the gun directly at Lewis. Lewis stated that Page demanded some clothing back, and once Lewis gave Page the clothing, the argument ended. After the argument, Lewis grabbed his own gun and went to leave the residence.

As Lewis was leaving, Page was standing in his own doorway with his back to Lewis. Lewis then saw Page begin to turn and feared that Page would shoot him. Lewis then shot Page twice. As the first shot was fired, Page's hand was up in the upper portion of his torso and the bullet went through his wrist, fracturing it, and then entered his chest, ultimately causing his death. At the time that he was shot, Page was not facing Lewis. Either before or after the first shot, Page told Lewis to "chill." Verbatim Report of Proceedings (VRP) (Mar. 17, 2016) at 71; Clerk's Papers (CP) at 56. Lewis then fired a second shot that struck Page in the deltoid region of the right arm, fracturing his arm. Lewis attempted to shoot Page a third time but the gun jammed.

At trial, Lewis asserted that he acted in self-defense. He testified that he was worried that Page might shoot him, but that he could not recall if Page had a gun in his hand before he fired the shots at Page. Lewis stated that after he fired the shots, he left the residence, dumped the gun in a lake, and did not return to the home for several days. When he returned home, Lewis called 911 and reported Page's death. Initially, Lewis told the police that he did not know anything about Page's death. In an interview with the police, Lewis originally claimed innocence for Page's death but ultimately admitted to killing Page. During the interview, Lewis did not claim that he acted in self-defense, that Page had a gun in his hands when he took his clothes back, or that Page pointed a gun at him before he shot Page. Lewis eventually showed the police where he disposed of the gun.

At the trial, multiple officers testified to seeing Page's gun on the floor next to his body. The medical examiner testified that one bullet struck Page's hand, which was in front of his torso. This shot went through his wrist and entered his upper chest. The medical examiner opined that the wounds would have made it difficult for Page to pull a trigger or grip anything. Lastly, the medical examiner testified that it was these shots that caused Page's death. In order to support his claim of self-defense, Lewis called his therapist, Regina Hicks. Hicks testified that Lewis was a former client of hers. Hicks established that Lewis had post-traumatic stress disorder (PTSD), a mental disorder. She said that the PTSD caused Lewis to have an exaggerated sense of threats and that Lewis was often defensive or reacted defensively to the threats. Lewis was aware of his mental health issues and knew that they would often result in verbal and physical fights. Hicks referred Lewis to anger management treatment to control his emotions. Lastly, Hicks testified that Lewis had told her about his contentious relationship with Page.

After the bench trial, the trial court made findings of fact and conclusions of law. The trial court found that "[a]fter Cory Page left [Lewis's] room, the threat, if any, subsided." CP at 53, Findings of Fact (FOF) 6. The court also found that "[w]hen Page left [Lewis's] room, he (Page) did not have a firearm in his hands." CP at 52, FOF 5. It also found that when Lewis shot Page, Page was not holding a firearm. Lastly, the trial court found that at the time of Page's death, Lewis "did not have a reasonable belief of imminent danger of harm, injury, or death." CP at 56, FOF 19. The trial court ultimately found Lewis guilty of second degree murder. The trial court specifically concluded that "the State has proven beyond a

reasonable doubt the absence of justifiable homicide in the murder of Cory Page." CP at 60, Conclusions of Law (COL) 6.

At the sentencing hearing, defense counsel orally moved for an exceptional downward sentence on the grounds that Page, to a significant degree, had provoked the incident. Defense counsel had not previously made the trial court or the State aware that counsel would be requesting a mitigated downward sentence. Defense counsel cited RCW 9.94A.535 as the authority granting the trial court discretion to mitigate the sentence on the grounds that, to a significant degree, Page had provoked the incident. Defense counsel also cited to an analogous case to support an exceptional downward sentence. The trial court, after taking a recess to consider the matter, denied the motion on the grounds that it found no basis to impose a mitigated sentence. Specifically, the trial court stated,

> I do not find under the provisions of RCW 9.94A.535 that there is a basis to depart from the standard range. And I am familiar with the authority that was cited by [defense counsel]. And I don't believe—although it is an intellectually sound argument by [defense counsel], I simply don't find there is a basis here.... I just don't see there is a basis for this.

VRP (April 28, 2016) at 28–29.

The trial court calculated Lewis's offender score to be a seven. The trial court's calculation included three prior class B felonies, three prior class C felonies, and Lewis's current conviction. Lewis's three class C felonies were (1) a conviction in January of 2006 for second degree unlawful possession of a firearm, (2) a conviction in May of 2006 for unlawful possession of a controlled substance, and (3) a conviction in October of 2009 for attempting to elude. Defense counsel did not object to the inclusion of the class C felonies in the offender score calculation.

The trial court then sentenced Lewis to a standard range of 300 months with 60 months on the firearm enhancement, and 36 months of community custody. As a condition of community custody, the trial court ordered that the community corrections officer (CCO) could consider having the defendant undergo a mental health evaluation and treatment. The judgment and sentence states "[p]er CCO consider mental health treatment [and] anger management. Evid[ence] in trial, D[efendant] diagnosed w/ PTSD." CP at 35. The trial court also imposed LFOs, including a $200 criminal filing fee. Lewis filed a timely direct appeal and PRP. Lewis appeals his conviction for second degree murder and his judgment and sentence, including the court ordered mental health evaluation.

Dkt. 9, Exh. 21 (*State v. Lewis*, No. 49006-4-II, 2018 WL 1919817, at *1–3 (Wash. Ct. App. Apr. 24, 2018) (unpublished), *review denied*, 191 Wash. 2d 1009, 424 P.3d 1211 (2018) (footnotes omitted)).

II.  <u>State Court Procedural History</u>

Mr. Lewis appealed his conviction and sentence to the Washington Court of Appeals. His appellate counsel's brief identified four grounds for relief, specifically: (1)

he received ineffective assistance of counsel during sentencing, (2) the court failed to make sufficient findings to support the denial of Mr. Lewis's request for an exceptional sentence below the standard range, (3) the court erred by ordering Mr. Lewis to obtain a mental health evaluation as a condition of community custody, and (4) the court erred by ordering Mr. Lewis to pay a criminal filing fee. Dkt. 9, Ex. 15 (appellant's opening brief) at 1-2.

Mr. Lewis did not file a pro se statement of additional grounds for relief on his direct appeal but instead filed a pro se personal restraint petition raising three additional claims. Dkt. 9, Ex. 18 (personal restraint petition). He argued (1) the court erred by including Mr. Lewis's prior convictions in calculating his offender score for sentencing purposes, (2) the evidence was insufficient to support his murder conviction because the murder was justified by provocation, and (3) the court erred by concluding there was no reasonable belief on Mr. Lewis's part that the victim, Cory Page, intended to inflict death or personal injury on him. *Id.* at 3-13.

The commissioner of the Court of Appeals ordered that the appeal and personal restraint petition be consolidated for decision. Dkt. 9, Ex. 19. On April 24, 2016, a three-judge panel of the Court of Appeals issued an unpublished opinion addressing and rejecting each of Mr. Lewis's claims. Dkt. 9, Ex. 21.

Mr. Lewis sought discretionary review by the Washington Supreme Court. His appellate counsel's petition for review raised two issues: (1) the trial court failed to articulate sufficient reasons to reject Mr. Lewis's request for a below-the-range mitigated sentence, and (2) defense counsel provided ineffective assistance at sentencing by failing to provide notice of a request for a mitigated sentence, failing to brief the issue,

and failing to cite compelling case law. Dkt. 9, Ex. 22 (petition for review) at 1. Mr. Lewis filed a pro se motion for discretionary review limited to his sufficiency-of-the-evidence claim alleging that the trial court erred by finding the homicide was not justified. Dkt. 9, Ex. 23 (motion for discretionary review) at 1. The clerk of the Supreme Court accepted Mr. Lewis's pro se motion for filing and indicated it would be considered along with appellate counsel's petition for review. Dkt. 9, Ex. 24 (clerk's letter). On September 5, 2018, the Supreme Court denied discretionary review without comment. Dkt. 9, Ex. 25 (order denying review). The Court of Appeals issued its mandate on September 11, 2018. Dkt. 9, Ex. 26 (mandate).

On January 4, 2019, Mr. Lewis filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 with this Court challenging his custody under the Pierce County judgment and sentence. Dkts. 4, 5. Mr. Lewis raises two grounds for relief: (1) there is insufficient evidence to support the second-degree murder conviction because the evidence at trial showed the killing was justified in that Mr. Page provoked the incident and Mr. Lewis acted in self-defense; (2) defense counsel provided ineffective assistance at sentencing by failing to "assiduously advocate" for an exceptional sentence below the standard range based on the fact that Mr. Page provoked the incident, and by failing to cite to the case of *State v. Whitfield*, 99 Wash. App. 331, 994, P.3d 222 (1999) in support of this argument. Dkts. 4, 5.

<u>EVIDENTIARY HEARING</u>

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct." 28 U.S.C. §

2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Where he or she "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing is not precluded. *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998)).

If, however, the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim will not be held, unless the petitioner shows:

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2). The phrase "failed to develop" contained in 28 U.S.C. § 2254(e)(2) "implies some lack of diligence" on the petitioner's part. *Williams v. Taylor*, 529 U.S. 420, 430-31 (2000). Thus, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the [petitioner] or the [petitioner's] counsel." *Id.* at 432. Accordingly, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the [petitioner] has not

'failed to develop' the facts under § 2254(e)(2)," and he or she "will be excused from

showing compliance with the balance of [that] subsection's requirements." *Id.* at 437.

"[A]n evidentiary hearing . . . is required where the petitioner's allegations, if true,

would entitle him to relief, and the petitioner has satisfied the requirements [the

Supreme Court set forth in] *Townsend v. Sain*, 372 U.S. 293 (1963)." *Stanley v. Schriro*,

598 F.3d 612, 624 (9th Cir. 2010). Under those requirements, the "district court *must*

hold an evidentiary hearing . . . when the facts are in dispute if (1) the petitioner 'alleges

facts which, if proved, would entitle him to relief,' and (2) the state court has not 'after a

full hearing reliably found the relevant facts.'" *Williams v. Schriro*, 423 F.Supp.2d 994,

1006 (D. Ariz. 2006) (quoting *Townsend*, 372 U.S. at 312-13) (emphasis in original); *see

also Stanley*, 598 F.3d at 624.

"In any other case in which the facts are in dispute and diligence has been

established, the district court . . . 'has the power, constrained only by [its] sound

discretion, to receive evidence bearing upon" the petitioner's claim. *Williams*, 423

F.Supp.2d at 1006 (quoting *Townsend*, 372 F.3d at 318). Where, on the other hand, the

petitioner "was afforded a full and fair hearing in state court, federal evidentiary hearings

ought to be the exception, not the rule." *Pike v. Guarino*, 492 F.3d 61, 70 (1st Cir. 2007);

*see also Townsend*, 372 U.S. at 318 (if the petitioner was afforded a full and fair hearing

by the state court resulting in reliable findings, the district court may, and ordinarily

should, accept the state court's findings).

An evidentiary hearing, therefore, "is required when the petitioner's allegations, if

proven, would establish the right to relief," but it "is *not* required on issues that can be

resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176

(9th Cir. 1998) (emphasis in the original); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Totten*¸ 137 F.3d at 1176; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (an evidentiary hearing is not required if the motion, files and records of the case conclusively show petitioner is entitled to no relief).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for relief raised in his petition. *Totten*, 137 F.2d at 1177. Because, as discussed below, the grounds petitioner raises may be resolved based solely on the state court record, and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

## EXHAUSTION OF STATE COURT REMEDIES

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1). Respondent concedes it appears petitioner properly exhausted his state court remedies. Dkt. 8, at 6.

## DISCUSSION

I. Standard of Review

A *habeas corpus* petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly

established precedent if the state court applies a rule that contradicts the governing law

set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

(quoting *Williams*, 529 U.S. at 405-06). It also is contrary to the Supreme Court's clearly

established precedent "if the state court confronts a set of facts that are materially

indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a

result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme

Court's clearly established precedent if: (1) the state court "identifies the correct

governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to

the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal

principle" from the Supreme Court's precedent "to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should

apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more

than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's

application of clearly established law must be objectively unreasonable." *Id.*; *see also*

*Schriro*, 550 U.S. at 473.

This is a "'highly deferential standard," which "demands that state-court decisions

be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)).

"[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

" a state prisoner must show that the state court's ruling on the claim being presented

was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*

at 103.

A *habeas* petition also may be granted "if a material factual finding of the state

court reflects 'an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8

(9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual

determination is "presumed to be correct," though, and the petitioner has "the burden of

rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

2254(e)(1). As such, a district court "may not simply disagree with the state court's

factual determinations," but rather it must "conclude" that those determinations did not

have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d

1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in

light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652

(2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review

"focuses on what a state court knew and did," and the state court's decision is

1   "measured against [the Supreme] Court's precedents as of 'the time the state court

2   renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63,

3   71-72 (2003)); *see also Greene v. Fisher*, 132 S.Ct. 38, 44 (2011).  In addition, "federal

4   habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S.

5   62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

6   determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780

7   (1990)). The error, furthermore, must have "had substantial and injurious effect or

8   influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637

9   (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas*

10  petitioners "are not entitled to habeas relief based on trial error unless they can

11  establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S.

12  438, 449 (1986)).

13  II.  <u>Claim I – Sufficiency of the Evidence</u>

14      In his first ground for relief, petitioner argues his second-degree murder

15  conviction is not supported by sufficient evidence. Specifically, he argues the state court

16  "unreasonably determined" that he did not act in self-defense in shooting Mr. Page and

17  therefore that the killing was not justified. Dkt. 5, at 7-12.

18      The Constitution forbids the criminal conviction of any person except upon proof

19  of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When

20  evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing

21  court must decide "whether, after viewing the evidence in the light most favorable to the

22  prosecution, any rational trier of fact could have found the essential elements of the

23  crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

24  (emphasis in original). "*Jackson* leaves [the trier of fact] broad discretion in deciding

25

what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (*quoting Jackson*, 443 U.S. at 319). The trier of fact is entitled to believe the State's evidence and to disbelieve the defense's evidence. *Wright v. West,* 505 U.S. 277, 296 (1992).

The *Jackson* inquiry focuses not on whether the trier of fact made the *correct* guilt or innocence determination but on whether it made a *rational* decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original); *see also Coleman v. Johnson*, 132 S. Ct. at 2065 ("[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality."). "A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

The Washington Court of Appeals considered petitioner's insufficient evidence claim in the context of his PRP and, after reviewing the record, concluded that, viewing the evidence in the light most favorable to the State, a reasonable trier of fact could have convicted Mr. Lewis on the basis of the evidence presented at trial. Specifically, the appellate court found:

> Lewis claims that the evidence presented at his bench trial was insufficient to support a conviction for second degree murder because his murder of Page was justified by provocation. Lewis claims that the trial court's finding of fact 19 is not sufficient to support the trial court's conclusion that he was guilty of second degree murder. Finding of fact 19 states that "[a]t the time of murdering [Page] [Lewis] did not have a reasonable belief of imminent danger of harm, injury, or death." CP at 57, FOF 19. The relevant conclusions of law state,

3. That the State has proven that [Lewis] is guilty beyond a reasonable doubt of the crimes of MURDER IN THE SECOND DEGREE [ ] ... in that, on or about the 7th day of December, 2014, [Lewis] did unlawfully and feloniously act with intent to cause the death of another person, [Page], thereby cause the death of [Page], a human being, and in the commission thereof was armed with a firearm ....

  ....

6. The State has proven beyond a reasonable doubt the absence of justifiable homicide in the murder of [Page].

7. The State has proven beyond a reasonable doubt [that Lewis] did not have a reasonable fear of injury, harm or death at the time of murdering Mr. Page.

CP at 59, 60, COL 3, 6, 7. To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). Following a bench trial, we review "whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Homan*, 181 Wn.2d at 105–06.

"Substantial evidence" is "evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Homan*, 181 Wn.2d at 106. Unchallenged findings of fact are verities on appeal. *Homan*, 181 Wn.2d at 106. If the record contains conflicting testimony, this court will not disturb the trier of fact's credibility and weight determinations. *State v. Camarillo,* 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

We review challenges to conclusions of law de novo. *Homan*, 181 Wn.2d at 106. "Where a conclusion of law is erroneously labeled as a finding of fact, we review it de novo as a conclusion of law." *State v. Z.U.E.*, 178 Wn. App. 769, 779 n.2, 315 P.3d 1158 (2014). " 'Circumstantial evidence and direct evidence are equally reliable' in determining the sufficiency of the evidence." *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010) (quoting *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)).

A person is guilty of second degree murder when that person, with intent to cause the death of another person, but without premeditation, causes the death of such person unless the killing is justified. RCW 9A.32.050(1). A killing is justified if the murderer reasonably believed that the victim had the intent to inflict death or great personal injury, reasonably believed that there was imminent danger of such harm being accomplished, and used such force as a reasonable prudent person would in similar conditions. RCW 9A.16.050, 020.

Here, Lewis admitted that he shot Page after they argued, but claimed self-defense because he was in fear of imminent harm at the time that he shot Page with his firearm. However, the trial court heard testimony from various officers and the medical examiner which indicated that the murder was not done in self-defense. The trial court found the officers' and the medical examiner's testimony credible, that Lewis did not initially claim self-defense, and that Page did not have a gun in his hands when Lewis shot him.

The trial court found that Page did not have a firearm when he left Lewis's room, and that when Page left Lewis's room any threat to Lewis, if one had ever existed, had subsided. CP at 53, FOF 6. The trial court concluded that Lewis's

testimony that he was in fear from Page at the time Lewis shot Page was not credible. CP at 53, COL 7.

Because we defer to the trier of fact for credibility determinations, and we view the evidence and the reasonable inferences in a light most favorable to the State, there was evidence sufficient to prove beyond a reasonable doubt that Lewis intended to cause the death of Page. As discussed above, substantial evidence was presented to support the trial court's findings of fact, including finding of fact 19, that Lewis's murder of Page was not done while Lewis was under a belief of imminent danger of harm, injury, or death. CP at 53, FOF 6. These findings of fact support the trial court's conclusion that the murder of Page was not justified. Thus, Lewis's claim fails.

Dkt. 9, Exh. 21, (*State v. Lewis*, No. 49006-4-II, 2018 WL 1919817, at *6–8 (Wash. Ct. App. Apr. 24, 2018), *review denied*, 191 Wash. 2d 1009, 424 P.3d 1211 (2018)). The Washington Supreme Court denied Mr. Lewis's petition for review of this claim without comment. Dkt. 9, Exh. 25.

To convict Mr. Lewis of the crime of second-degree murder, the State was required to prove, beyond a reasonable doubt, that Mr. Lewis with intent to cause the death of Mr. Page, caused the death of Mr. Page, and that the killing was not justifiable. RCW 9A.32.050(1); RCW 9A.16.050, 020; *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983) (in a murder prosecution where the defense presents "some evidence" of self-defense it is the State's burden to prove beyond a reasonable doubt that the killing was not justifiable); WPIC27.02Murder—Second Degree—Intentional—Elements, 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 27.02 (4th Ed); WPIC WPIC16.02 Justifiable Homicide—Defense of Self and Others, 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 16.02 (4th Ed).

It is a defense to the charge of murder that the homicide was justifiable. Homicide is justifiable when committed in the lawful defense of the slayer when: 1) the slayer reasonably believed that the person intended to inflict death or great personal injury; 2) the slayer reasonably believed that there was imminent danger of such harm

1    being accomplished; and 3) the slayer employed such force and means as a reasonably

2    prudent person would use under the same or similar conditions as they reasonably

3    appeared to the slayer, taking into consideration all the facts and circumstances as they

4    appeared to him at the time of and prior to the incident. RCW 9A.16.050, 020; *State v.*

5    *Allery*, 101 Wn.2d 591, 682 P.2d 312 (1984); WPIC16.02 Justifiable Homicide—

6    Defense of Self and Others, 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 16.02 (4th

7    Ed).

8         In his petition, Mr. Lewis points to evidence that he believes "belies" the

9    conclusion that "there was no reasonable belief" on his part that Mr. Page intended to

10   inflict death or bodily injury upon Mr. Lewis. Specifically, he points to evidence that he

11   and Mr. Page had an acrimonious relationship, that they had previously had a fist fight

12   which resulted in Mr. Lewis separating his shoulder, that on the night in question Mr.

13   Page was looking to have a fist fight with Mr. Lewis, that Mr. Page had a history of

14   anger problems and had tried to choke his prior roommate. Dkt. 5, at 8-10. He points to

15   his own testimony that on the night in question Mr. Page called Mr. Lewis into his room

16   and belittled him for no apparent reason, calling him a "little bitch", that he wanted a fist

17   fight with Mr. Lewis, that he picked a gun up from the bed and started waiving it and

18   pointing it at Mr. Lewis, threatening to "clap" him, that he spat on Mr. Lewis and told him

19   he could do whatever he wanted to do to him, continuing to wave his gun. *Id.* He points

20   to his own testimony that he shot Mr. Page when he started to turn toward him from

21   inside the doorway of Mr. Page's room because he feared Mr. Page was going to shoot

22   him. *Id.*

23

24

25

According deference to the trial judge's findings, and to the state appellate courts' resolution of the claim in relation to the evidence presented at trial, this Court must conclude that the Washington courts reasonably rejected petitioner's challenge to the sufficiency of the evidence as there was, indeed, ample evidence in the record to support petitioner's conviction. A rational trier of fact could have concluded from the evidence that Mr. Lewis was not acting in self-defense when he shot and killed Mr. Page.

Specifically, there was evidence presented at trial regarding statements made by Mr. Lewis during a January 26, 2015 interview, when he first confessed to shooting Mr. Page. There was evidence Mr. Lewis stated in the interview that Mr. Page did not have a gun in his hand when he left Mr. Lewis's room after the verbal dispute concluded and Mr. Page had retrieved his clothing and subsequently returned to his own room. Dkt. 9, Exh. 2 (finding of fact 5), Exh. 6, at 135-136, Exh. 11, at 57-57. There was evidence that after Mr. Lewis left and returned to his room, Mr. Page then grabbed his own firearm from his closet and left his room. Dkt. 9, Exh. 11, at 27-28. The trial court could reasonably find, as it did, that "[a]fter Cory Page left the defendant's room, the threat, if any, subsided: Page left the defendant alone. Page was not in the defendant's face. Page was not pointing a gun at the defendant. Page was not physically threatening the defendant. Page was not waiving a gun around." Dkt. 9, at Exh. 2, (finding of fact #6).

Evidence was also introduced through the testimony of Detectives Merod and Benson, that Mr. Lewis also stated in the interview that Mr. Page did not have a gun in his hand when he shot him. Dkt. 9, Exh. 2 (finding of fact 10), Exh. 6, at 131-132, 135-136, Dkt. 9, at 57, Dkt. 11, at 57. The detectives testified that Mr. Lewis stated in the

interview that after he shot Mr. Page the first time Mr. Page said to "stop playing" or "chill Peso" (defendant's nickname) but that Mr. Lewis proceeded to fire a second shot and then attempted to fire a third shot but that his gun jammed. Dkt. 9, Exh. 2 (finding of fact 13), Exh. 6, at 131-132, Exh. 11, at 71.

There was also evidence from the medical examiner that the shot that hit Mr. Lewis's wrist (fracturing his wrist) and passed into his chest ultimately caused Mr. Page's death. Dkt. 9, Exh. 9, at 80, 95. The medical examiner testified that the gunshot wound to Mr. Page's wrist would have made it very difficult to grip something and he did not think Mr. Page could have fired a firearm. Dkt. 9, Exh. 9, at 90, 92. There was further evidence from the medical examiner that the gun was fired when Mr. Page's right side was facing the gun. Dkt. 9, Exh. 9, at 93.

The detectives also testified that in the January 26, 2015, interview Mr. Lewis stated that after shooting Mr. Page, he disposed of the firearm, throwing it in Snake Lake where it was subsequently found by law enforcement. Dkt. 9, Exh. 8, at 13-14. There was evidence that Mr. Page returned to the apartment several days later, disposed of the shell casings, and called police but initially denied any involvement in the shooting. Dkt. 9, Exh. 11, at 32-34, Exh. 9, at 53. There was also evidence introduced through the testimony of Mr. Page's father that Mr. Lewis had told him that members of a Lakewood gang might have killed Mr. Page. Dkt. 9, Exh. 4, at 15. The detectives also testified that Mr. Lewis did not initially claim self-defense but instead denied any involvement in Mr. Page's killing and that it had been the detectives, not Mr. Lewis, who first brought up the idea of self-defense before Mr. Lewis confessed during the January 26, 2015, interview. Dkt. 9, Exh. 6, at 121.

At trial Mr. Lewis testified that he and Mr. Page had had prior altercations. Specifically, he testified regarding a fist fight that Mr. Page had provoked over Mr. Lewis's family eating Mr. Page's food and in which Mr. Lewis's shoulder had been separated. Dkt. 9, Exh. 11, at 16-18. Mr. Lewis testified that he saw Mr. Page get angry a lot and that he seemed to always have an issue or disagreement with Mr. Lewis. Dkt. 9, Exh. 11, at 15-16. He testified that he was aware Mr. Page had had an altercation with his prior roommate Mookie and had "choked him or something." Dkt. 9, at Exh. 11, at 14. Mr. Lewis also testified at trial that he actually wasn't sure whether Mr. Page had a gun in his hand when he left Mr. Lewis's room or when he shot him but acknowledged that Mr. Page was not pointing a gun at him when he shot him. Dkt. 9, Exh. 11, at 55-59, 69. Mr. Lewis testified he was within four to six feet with an unobstructed view of Mr. Page when he shot him and that he did not say anything to Mr. Page before he shot him. Dkt. 9, Exh. 11, at 50, 63. Mr. Lewis testified that Mr. Page was standing in his room with his back to Mr. Lewis and that he shot Mr. Page when he began to turn because he was afraid Mr. Page was going to shoot him. Dkt. 9, Exh. 11, at 30.

A rational trier of fact could reasonably conclude that Mr. Lewis's claim that he acted in self-defense was inconsistent with the facts and not credible. Specifically, as described, there was evidence that Mr. Page did not have a gun in his hand when he left Mr. Lewis's room after their verbal dispute and retrieving his clothes, that he was inside his own room with his back to Mr. Lewis when Mr. Lewis approached him in the hallway, that Mr. Lewis shot Mr. Page twice (once through the wrist and into the chest, and once in the deltoid) when he started to turn, and that Mr. Page did not have a gun in his hand when Mr. Lewis, without any verbal warning, shot him twice and attempted to

shoot him a third time. Although in his trial testimony, Mr. Lewis subsequently testified that he wasn't actually sure whether Mr. Page had a gun in his hand when he left his room or when he shot him, he acknowledged that Mr. Page was not pointing a gun at him when he shot him.

There was also evidence that Mr. Page told Mr. Lewis to "stop playing" or "chill Peso" (defendant's nickname) before Mr. Lewis fired the second shot but that he proceeded to fire a second shot and then attempted to fire a third shot but his gun jammed. Furthermore, there was evidence that after the killing, Mr. Lewis denied involvement, made efforts to divert attention from himself and onto other possible suspects, and that detectives, not Mr. Lewis first brought up the issue of self-defense.

Based on this evidence, a rational trier of fact could conclude that Mr. Lewis did not have a reasonable belief of imminent danger of harm, injury or death, when he shot Mr. Page, and find his trial testimony to the contrary not to be credible. Considered in the light most favorable to the State, there was sufficient evidence from which a rational trier of fact could conclude that Mr. Lewis intended to cause the death of Mr. Page, did cause the death of Mr. Page, and that the killing was not justifiable. The state courts applied the appropriate standard in evaluating petitioner's sufficiency of the evidence claim and reasonably concluded that, based upon the evidence presented at trial, a rational trier of fact could find that Mr. Lewis was guilty of second-degree murder. The Court finds Mr. Lewis fails to demonstrate the state court's conclusion was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, Ground 1 should be denied.

1    III.  Ineffective Assistance of Counsel

2        Mr. Lewis also claims his trial attorney rendered ineffective assistance during

3    sentencing by failing to "assiduously advocate" for an exceptional sentence below the

4    standard range based on the fact that Mr. Page provoked the incident, and by failing to

5    cite to the case of *State v. Whitfield*, 99 Wash. App. 331, 994 P.3d 222 (1999) in

6    support of this argument. Dkts. 4, 5.

7        The Sixth Amendment guarantees a criminal defendant the right to effective

8    assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of

9    an ineffective-assistance claim is that counsel's unprofessional errors so upset the

10    adversarial balance between defense and prosecution that the trial was rendered unfair

11    and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

12    Claims of ineffective assistance of counsel are evaluated under the two-prong test set

13    forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's

14    performance was deficient and, (2) that the deficient performance prejudiced the

15    defense. *Strickland*, 466 U.S. at 687.

16        With respect to the first prong of the *Strickland* test, a petitioner must show that

17    counsel's performance fell below an objective standard of reasonableness. *Id.*, at 688.

18    Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. "A fair

19    assessment of attorney performance requires that every effort be made to eliminate the

20    distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

21    conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*,

22    466 U.S. at 689. In order to prevail on an ineffective assistance of counsel claim, a

23

24

25

1  petitioner must overcome the presumption that counsel's challenged actions might be

2  considered sound trial strategy. *Id.*

3      The second prong of the *Strickland* test requires a showing of actual prejudice

4  related to counsel's performance. In order to establish prejudice, a petitioner "must

5  show that there is a reasonable probability that, but for counsel's unprofessional errors,

6  the result of the proceeding would have been different. A reasonable probability is a

7  probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The reviewing

8  court need not address both components of the inquiry if an insufficient showing is

9  made on one component. *Id.* at 697.

10     When considering an ineffective assistance of counsel claim on federal habeas

11  review, "[t]he pivotal question is whether the state court's application of the *Strickland*

12  standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As

13  explained by the Court in *Harrington*, "[a] state court must be granted a deference and

14  latitude that are not in operation when the case involves review under the *Strickland*

15  standard itself." *Id.*

16     The trial court record shows that Mr. Lewis's sentencing range under state law

17  for the second-degree murder conviction was 276 to 376 months (which included a

18  mandatory 60-month enhancement for use of a firearm). Dkt. 9, Exh. 14, at 8, 16-18. At

19  sentencing the State requested a sentence at the high end of the standard range of

20  confinement for 316 months plus a consecutive 60-month firearm enhancement for a

21  total of 376 months. Dkt. 9, Exh. 14, at 16-18. Defense counsel acknowledged that the

22  court had rejected Mr. Lewis's self-defense theory but argued the court should impose

23  an exceptional sentence below the standard range based on two statutory mitigating

24

25

factors under Wash. Rev. Code § 9.94A.535(1)[1]. Dkt. 9, Exh. 14, at 25-26. Specifically, defense counsel argued:

> Your Honor, I'm asking the Court to look at the Sentencing Guidelines, to look at RCW 9.94A.535, which are the departures from the guidelines. And in that, mitigating circumstances that the Court is to consider, it says: The Court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence. So it is only a preponderance of the evidence that you have to find this by, your Honor. It says: The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences. The first one is (a) to a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.
> Now, you heard the testimony. Obviously, the Court did not find that my client was acting in self-defense, but I think, clearly, the testimony would substantiate that mitigating circumstance. The second one is (c) the defendant committed the crime under duress, coercion, threat, or compulsion, insufficient to constitute a complete defense, but which significantly affected his or her conduct. So, again, your Honor, we're looking at an issue where this is a, I guess, what is described as failed self-defense. But I think that my client certainly felt that he was being threatened under the circumstances and that would be an additional reason why the Court can use that circumstance.

Dkt. 9, Exh. 14, at 25-26.

Defense counsel also cited *State v. Pascal*, 108 Wash. 2d 125 (1987) in support of his request for an exceptional sentence downward. Dkt. 9, Exh. 14, at 26-27. Defense counsel noted that *Pascal* involved "a woman who was probably a battered woman was found guilty of Manslaughter in the First Degree" and that the appellate court upheld the trial court's significant downward departure from the standard sentencing range (the defendant served 90 days on a sentence where the standard range was 31 to 41 months) based on the same mitigating factors. Dkt. 9, Exh. 14, at 26-27. Defense

---

[1] Mr. Lewis's defense counsel relied upon two mitigating factors authorizing a sentencing court to impose an exceptional sentence downward as set forth in Wash. Rev. Code § 9.94A.535(1) (a) and (c). Wash. Rev. Code § 9.94A.535(1) (a) provides "that to a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident", while (c) of the same subsection provides "[t]he defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct."

1    counsel indicated he was not asking the court to "go down to that kind of level" but

2    asked that the court sentence defendant to ten years (60 months as an exceptional

3    sentence for the murder with the 60-month firearm enhancement). Dkt. 9, Exh. 14, at

4    27.

5          The trial court acknowledged defense counsel's argument to be "intellectually

6    sound" but rejected the argument for an exceptional downward departure from the

7    standard range. Specifically, the trial court found:

8          I do not find under the provisions of RCW 9.94A.535 that there is a basis to
          depart from the standard range. And I am familiar with the authority that was
          cited by [defense counsel]. And I don't believe –although it's an intellectually
9          sound argument by [defense counsel], I simply don't find there is a basis here.

10   Dkt. 9, Exh. 14, at 28-29. The Court also rejected the State's argument for a sentence at

11   the high end of the standard range and imposed a sentence toward the lower end of the

12   range of 300 months imprisonment (240 for the murder plus 60 months for the firearm

13   enhancement). Dkt. 9, Exh. 14, at 30-31.

14         Mr. Lewis argued to the Washington Court of Appeals, as he does in this habeas

15   petition, that defense counsel rendered ineffective assistance during sentencing by

16   failing to "fervently advocate for a mitigated sentence downward" and by failing to cite to

17   the case of *State v. Whitfield*, 99 Wash. App. 331, 994, P.3d 222 (1999), in support of

18   his sentencing arguments. Dkt. 9, Exh. 15, at 8-15; Dkt. 5, at 15. The Washington Court

19   of Appeals, applying *Strickland*, rejected petitioner's ineffective assistance of counsel

20   claim:

21         Lewis argues that "it was deficient performance for defense counsel not to
          cite [*State v.*] *Whitfield* and make it an essential part of a more zealous advocacy
22         for the mitigated sentence Lewis was requesting." Br. of Appellant at 13; *State v.
          Whitfield*, 99 Wn. App. 331, 994 P.2d 222 (1999). In *Whitfield*, the trial court
23         imposed an exceptional downward sentence based on the mitigating factor that
          the victim was the provoker of the incident. *Whitfield*, 99 Wn. App. at 333. The

24

25

1

2

3

4

5

6

7

8

9

trial court agreed with the defendant that, to a significant degree, the victim was the provoker of the incident, and thus, imposed an exceptional downward sentence from the standard range. *Whitfield*, 99 Wn. App. at 333. On appeal, the State argued that, as a matter of law, the victim's nonthreatening words were insufficient to provoke the assault and that the defendant's response was not proportionate. *Whitfield*, 99 Wn. App. at 335. Division One affirmed the trial court's determination that verbal provocation is a sufficient mitigating factor to invoke an exceptional downward sentence from the standard range and that the defendant's response to the initial provocation need not be proportional. *Whitfield*, 99 Wn. App. at 337–38.

*Whitfield* is distinguishable because here the issue is whether there was any provocation at all when Lewis shot Page, not whether Page's provocation was sufficient. Thus, whether or not defense counsel cited to *Whitfield*, it would not have changed the trial court's determination regarding whether a mitigated exceptional downward sentence was factually or legally supported under RCW 9.94A.535(1)(a). Therefore, because the outcome of the sentencing would not have been affected by his counsel citing to *Whitfield*, Lewis fails to show the prejudice prong of the *Strickland* test. *Strickland*, 466 U.S. at 687. Therefore, we hold that Lewis's claim of ineffective assistance of counsel fails.

10

11

12

13

Dkt. 9, Exh. 21 (*State v. Lewis*, No. 49006-4-II, 2018 WL 1919817, at *4–5 (Wash. Ct. App. Apr. 24, 2018), *review denied*, 191 Wash. 2d 1009, 424 P.3d 1211 (2018)). The Washington Supreme Court denied Mr. Lewis's petition for review of this claim without comment. Dkt. 9, Exh. 25.

14

15

16

17

18

19

20

21

22

23

Mr. Lewis has failed to show the Washington appellate courts' application of the *Strickland* standard was unreasonable. In *Whitfield*, the evidence was that the victim (the defendant's niece) had been verbally confronting the defendant's wife and the defendant, accusing the defendant of infidelity. *State v. Whitfield*, 99 Wash. App. 331, 332, 994 P.2d 222, 222 (1999). The evidence showed that the victim followed the defendant and his wife and child when they tried to leave and continued to verbally confront them, at which point the defendant physically assaulted her. *Id.* The trial court found the victim began and pursued a "controversial, confrontational and accusatory conversation" with the defendant's wife and that by her insistent behavior, the victim was a provoker of the incident. *Id.* The trial court imposed an exceptional sentence

24

25

below the standard range based on the mitigating factor that to a significant degree, the victim was the provoker of the incident. *Whitfield*, 99 Wash. App. at 332.

On appeal the State argued that, as a matter of law, the victim's nonthreatening words were insufficient to provoke the defendant's assault and the assault was so disproportionate to the victim's words that the victim did not provoke the assault to a significant degree. *Whitfield*, 99 Wash. App. at 332. The appellate court affirmed the trial court's determination that verbal provocation is a sufficient mitigating factor to invoke an exceptional downward sentence from the standard range and that the defendant's response to the initial provocation need not be proportional. *Whitfield*, 99 Wn. App. at 337–38.

In contrast to *Whitfield*, in this case, as noted above, the trial court found that "[a]fter Cory Page left the defendant's room, the threat, if any, subsided: Page left the defendant alone. Page was not in the defendant's face. Page was not pointing a gun at the defendant. Page was not physically threatening the defendant. Page was not waiving a gun around." Dkt. 9, at Exh. 2, (finding of fact #6). There was also evidence that after Mr. Lewis left and returned to his room, Mr. Page then took his own firearm out of his closet and left his room. Dkt. 9, Exh. 11, at 27-28. There was evidence that Mr. Page was back inside his own room with his back to Mr. Lewis and did not have a gun in his hand when he began to turn around and Mr. Lewis shot him. Dkt. 9, Exh. 2 (finding of fact 10), Exh. 6, at 131-132, 135-136, Dkt. 9, at 57, Dkt. 11, at 28-29, 57. There was evidence that after Mr. Lewis shot Mr. Page the first time Mr. Page said to "stop playing" or "chill Peso" (defendant's nickname) but that Mr. Lewis proceeded to

fire a second shot and then attempted to fire a third shot but that his gun jammed. Dkt. 9, Exh. 2 (finding of fact 13), Exh. 6, at 131-132, Exh. 11, at 71.

Furthermore, the trial court record shows that defense counsel argued for an exceptional downward departure from the standard range at sentencing based on Wash. Rev. Code § 9.94A.535(1) (a) and (c). Defense counsel also cited to *State v. Pascal*, 108 Wn.2d 125, in which the Washington Supreme Court upheld a significant downward departure from the standard sentencing range based upon similar mitigating factors.

In *State v. Pascal*, the State charged defendant with second degree murder and manslaughter for stabbing her boyfriend to death. *Pascal*, 108 Wn.2d 125. At trial, defendant contended that she had acted in self-defense and suffered from battered women's syndrome. *Id.*, at 129. The jury rejected the defendant's self-defense claim and convicted her of first-degree manslaughter. *Id.* The trial court sentenced the defendant to only 90 days (a significant downward departure from the standard range) based largely on the mitigating factors that: "(a) The victim in this case was an initiator, willing participant, aggressor or provoker of the incident; (b) The defendant committed the crime under duress, coercion, threat or compulsion insufficient to constitute a complete defense but which significantly affected her conduct; (c) The defendant's capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law was significantly impaired because she is a battered woman." *Id.*

The Washington Supreme Court upheld the defendant's sentence finding that:

> the trial court's findings are supported by the record; there was evidence that on several occasions, both prior to and on the day of the incident in which [the defendant's boyfriend] was killed, [the defendant's boyfriend] had subjected the defendant to physical beatings and to verbal and emotional abuse. Furthermore, the trial court was justified in relying on these factors in imposing an exceptional sentence.

*State v. Pascal*, 108 Wash. 2d 125, 136, 736 P.2d 1065, 1071–72 (1987).

The record shows the trial judge considered defense counsel's arguments regarding Wash. Rev. Code 9.94A.535, including analogous authority cited by defense counsel upholding the trial court's application of similar mitigating factors to support a significant downward departure from the standard sentencing range. Yet, having considered these factors, the trial judge concluded that, based on the record in this case, he did not find "under the provisions of RCW 9.94A.535 that there is a basis to depart from the standard range." Dkt. 9, Exh. 14, at 28-29.

Based on the record, the state appellate courts could reasonably conclude that defense counsel's failure to cite to *Whitfield* was not prejudicial because the issue in the instant case was "whether there was any provocation at all when Lewis shot Page, not whether Page's provocation was sufficient" and that, therefore *Whitfield* was distinguishable. The Court finds the appellate courts reasonably concluded that Mr. Lewis failed to satisfy the prejudice prong of the *Strickland* test. Accordingly, the Court finds Mr. Lewis has not demonstrated the state courts' conclusion was contrary to, or an unreasonable application of, clearly established federal law, or was an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, Ground 2 should be denied.

<u>CERTIFICATE OF APPEALABILITY</u>

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **July 24, 2020**, as noted in the caption.

Dated this 30th day of June, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 29